UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TINA N. PHILLIPS, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:15-cv-01412-RDP |
| } | |
| BOARD OF TRUSTEES OF THE } | |
| UNIVERSITY OF ALABAMA, et. al., } | |
| } | |
| Defendant. | |

**MEMORANDUM OPINION**

I.  Introduction

This case is before the court on Defendant University of Alabama Health Services Foundation, P.C.'s ("UAHSF") Motion for Summary Judgment. (Doc. # 33). The Motion is fully briefed. (Docs. # 33, 34, 35, 36, 38, and 41).

In her Complaint, Plaintiff alleges that, during her employment, she was subject to a retaliatory hostile environment, race discrimination, and other retaliation. (Doc. # 1). Plaintiff brought this action against two entities: UAHSF and The Board of Trustees of The University of Alabama ("the Board" or "UAB"). (Doc. # 1). UAB does not dispute that it was Plaintiff's employer. (Doc. # 35). The question presented in UAHSF's Motion is whether it was also Plaintiff's employer under either the single employer or joint employer theories.

**II.     Facts**[1]

UAHSF is a private, section 501(c)(3) entity, located at 500 22nd Street, Birmingham, Alabama, 35233, whose President is Dr. James Bonner. (Doc. # 33-3 64, Doc. # 33-4 ¶ 3). It is governed by a board of directors, and 16 of those 19 directors have no affiliation with UAB. (Doc. # 33-3 62-63). The UAB School of Medicine is part of the University of Alabama System and is headquartered in Tuscaloosa.  Ala. Code §§ 16-47-1, *et. seq*.  UAB's Medical School is governed by a Board of Trustees, and the members of the Board are appointed pursuant to state law. *Id.*

UAB and UAHSF have separate financial reporting, financial organizations, and payrolls. (Doc. # 33-3 33; Doc. # 33-4 ¶ 4). The Department of Physical Medicine & Rehabilitation ("PM&R") is located at the Spain Rehabilitation Center, 1717 6th Avenue South, Birmingham, Alabama 35233. (Doc. # 33-2 15-16, 71-72; Doc. # 33-4 ¶ 5).

Yvonne Akins is the Executive Administrator for PM&R and is paid by both UAB and UAHSF. (Doc. # 33-3 14, 18, 25-26, 31).  PM&R is a department of the UAB School of Medicine and the chair of that department, Dr. Amie McLain, reports directly to the Dean of the UAB School of Medicine. (Doc. # 33-3 14, 80). Dr. McLain is employed by both UAB and UAHSF. (Doc. # 33-4 ¶ 6).

PM&R employs physicians who teach at the School of Medicine and do research, which is funded by monies received from the State and research grants. All of these monies are held in

---

[1] The court views the facts in the light most favorable to Plaintiff, the non-movant. The court has reviewed the evidence, and all factual inferences arising from it, in the light most favorable to the nonmoving party. Also, these are the facts for summary judgment purposes only; they may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.'" (citation omitted)). Thus, the court recognizes that the facts that may be presented if this case were to proceed to trial may be different than the facts presented on summary judgment; however, the court must take Plaintiff's plausible versions of the facts as true at this stage. If the facts are in dispute, they are stated in a manner most favor to the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

PM&R accounts which are maintained within the UAB Oracle accounting system. (Doc. # 33-4 ¶ 7; Doc. # 33-3 61).  PM&R physicians also have clinical duties and, as part of those duties, see patients.  The funds generated by those activities are held in PM&R accounts maintained as part of the UAHSF Lawson accounting system. (Doc. # 33-4 ¶ 8; Doc. # 33-3 59-60). The majority of PM&R physicians are dually-funded by UAB and UAHSF, have appointments with each entity, and receive separate paychecks from each entity. (Doc. # 33-4 ¶ 9; Doc. # 33-2 37-39).

Akins supervises non-physician employees in PM&R, some of whom are UAB employees, who receive UAB payroll checks, and some of whom are UAHSF employees, who receive UAHSF paychecks. (Doc. # 33-4 ¶ 10). UAB and UAHSF maintain separate human resources departments (Doc. # 33-2 88-89) and separate employment policies, including retirement plans. (Doc. # 33-3 33-34; Doc. # 33-4 ¶ 11). In supervising her UAB employees, Akins follows the UAB employment policies and procedures (*e.g.*, paid time off, severance, discipline, and performance evaluation), consults UAB human resources regarding employment issues, and works with UAB payroll regarding employee pay and benefits. (Doc. # 33-4 ¶ 12). When Akins has a vacancy for a UAB position, she contacts UAB human resources and that department posts the position and helps her fill it. (Doc. # 33-4 ¶ 12).

In supervising her UAHSF employees, Akins follows the UAHSF employment policies and procedures (*e.g*., paid time off, severance, discipline, and performance evaluation), consults UAHSF human resources regarding employment issues, and works with UAHSF payroll regarding employee pay and benefits. (Doc. # 33-4 ¶ 13). When Akins has a vacancy for a UAHSF position, she contacts UAHSF human resources and that department posts the position and helps her fill it. (Doc. # 33-4 ¶ 13).

For six years, Plaintiff worked as a Financial Officer III in PM&R, reporting directly to Akins. (Doc. # 33-2 14-16; Doc. # 33-3 18). The PM&R Financial Officer III position was established as a UAB position, posted as a UAB position, and its records are maintained within UAB's human resources system. (Doc. # 33-3 96). During the course of Plaintiff's employment, Akins applied UAB's policies and procedures to her, recommended pay increases through UAB's payroll system, evaluated her under UAB's performance evaluation system, and provided her benefits, like paid time off and severance, pursuant to UAB's policies. (Doc. # 33-4 ¶ 14; Doc. # 33-3 74-75). However, in an effort to comply with state and federal employment laws, UAB and UAHSF have entered into an Affiliation Agreement in which they have agreed that their employment practices would be consistent. (Doc. # 33-3 13).

Plaintiff never filled out an application with UAHSF, nor does she recall receiving any UAHSF employee handbooks or any other UAHSF employment documents when she began as a Financial Officer III. (Doc. # 33-2 16-17). Plaintiff did not have a separate appointment with UAHSF. Her paychecks were issued by UAB, and she has not received a paycheck from UAHSF. (Doc. # 33-3 23-24). Akins testified that Plaintiff's salary derived from one source—UAB. (Doc. # 33-3 43). For a period of approximately 11 or 12 months during the 2011 - 2012 timeframe, because of a shortfall in state funds, Akins transferred funds from a PM&R account that held money generated by PM&R physician clinical activities (that were held in a Lawson account) into a UAB account to make up a portion of Plaintiff's pay. (Doc. # 33-3 43-45; Doc. # 33-4 ¶ 16). These funds were transferred from HSF Finance from an account that was titled "Department of PMR." (Doc. # 33-2 at 40-50).

Plaintiff accumulated time as a UAB employee under its retirement program. (Doc. # 33-2 17-18). Plaintiff has never received any retirement benefits from UAHSF and does not have a

credited service date with HSF. (Doc. # 33-2 94-95). Plaintiff never sought assistance from UAHSF human resources. (Doc. # 33-2 113).

When Akins decided to eliminate the Financial Officer III position in PM&R, she worked with UAB human resources and applied UAB's severance policy. (Doc. # 33-4 ¶ 15). She did not consult UAHSF human resources or check on UAHSF policies. (Doc. # 33-4 ¶ 15).  The termination letter Plaintiff received is on letterhead of the UAB School of Medicine, Department of Physical Medicine and Rehabilitation, is signed by McLain and Akins, and references her entitlement to severance pay pursuant to a UAB Personnel Policy. (Doc. # 33-2 71-72). Her severance pay slip indicated it was from UAB (Doc. # 33-2 93) and the funds came from an account in Oracle. (Doc. # 33-2 106-107). After the elimination of her position, Plaintiff began a new job with the UAB School of Education.  (Doc. # 33-2 94).  She did not lose her credited service date with UAB.  (*Id.*).

Plaintiff's job duties in the Financial Officer III position included responsibilities related to both UAB and UAHSF.  (Doc. 33-2 73-80; Doc. 33-3 24). Plaintiff had computer access to both Oracle and Lawson. (Doc. # 33-2 33). PM&R has UAB accounts that are separate from UAHSF accounts (Doc. # 33-2 42, 119) although Plaintiff worked on a Funds Flow document that looked at the two together. (Doc. # 33-2 119). Plaintiff was a signatory on accounts containing funds generated and controlled by the Department of PM&R and held by HSF Finance. (Doc. # 33-4 ¶ 8; Doc. # 33-3 59-60; Doc. # 33-2 14).

In addition to Akins, Plaintiff was assigned work and special projects by the Chief Financial Officer of HSF, Mike Heckman. (Doc. 33-2 32). Plaintiff also received direction or instructions concerning her work from HSF Controller, Stephanie McClinton. (Doc. 33-2 32).

Plaintiff was required to attend monthly HSF financial statement meetings attended by HSF senior management, including CFO Heckman and Controller McClinton. (Doc. 33-2 32).

Plaintiff introduced a UAB report into the Rule 56 record which states the following: "The Board and HSF's Board have entered into an agreement under which UAB and HSF have established a common management group, the UAB Health System, to provide management for their existing and future healthcare delivery operations." (Doc. 33-3 p. 20). Additionally, Akins testified that there is a Joint Operating Leadership body, consisting of Will Ferniany, the CEO of UAHSF, Selwyn Vickers, the Dean of the School of Medicine, and James Bonner, the current President of UAHSF, which has responsibility for the overall financial operations of all of the "clinical departments." (Doc. # 33-3 17-18).

### III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*").  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).  As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial.  *See Anderson*, 477 U.S. at 252.  "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV. Discussion

Title VII defines an employer as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 2000e(b). The term "employer" is to be interpreted liberally. *See Lyes v. City of Riviera, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999). In line with that liberal construction, the Eleventh Circuit recognizes three doctrines by which an employee may assert a Title VII claim against an entity that is not her "recognized employer": (1) the "single employer" theory, where the operations of two entities are so entwined that they function as a single employer; (2) the "joint employer" theory, where two entities contract for a specific task but one of the entities exercises control over the employees of the other; or (3) the "agency" theory, where an employer delegates sufficient control over employees to a third party. *Id.*  It is the first two doctrines that are at issue here: Plaintiff argues that UAHSF was her employer under both the single employer and joint employer theories.  (Doc. # 36).[2]  The court addresses each theory, in turn.

---

[2] Under the agency theory, one "employer delegates sufficient control of some traditional rights over employees to a third party." *Lyes*, 166 F.3d at 1341. "For the agency theory, the claimant must show that one entity

A.      The "Single Employer" Theory

The single employer theory "involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise[.]" *Long v. Aronov Realty Mgmt., Inc.*, 645 F.Supp.2d 1008, 1029 (M.D. Ala. 2009) (internal quotations and citations omitted). The showing necessary to warrant a single employer finding is a high level of integration with respect to ownership and control. *See Long,* 645 F.Supp.2d at 1030; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987). The relevant factors courts are to consider are: (1) interrelation of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control. *McKenzie*, 834 F.2d at 933.  However, where a governmental entity (such as UAB) is involved, federalism and comity concerns counsel against applying the "common ownership or financial control" and "common management" prongs of the standard to combine or redefine a governmental entity that the state has determined is a separate and distinct entity under state law. *See, e.g., Lyes v. City of Riviera Beach, Fla.*, 166 F.3d at 1343-44; *see also, Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1184 (8th Cir. 1998) (refusing to consolidate private association and governmental entity under Title VII).

The court now turns to a discussion of how the four factors apply and the import of the federalism and comity concerns that are present here.

   1.     Interrelation of Operation

"Courts are to consider several indicia of interrelatedness: '(1) combined accounting records; (2) combined bank accounts; (3) combined lines of credits; (4) combined payroll

---

acted as the other's agent with respect to employment practices." *Greason v. Se. R.R. Assoc. Bureaus*, 650 F.Supp. 1, 4 (N.D. Ga. 1986) (emphasis added); *see also Llampallas*, 163 F.3d 1236, 1244-45 (11th Cir.1998) (the integrated enterprise theory concentrates on the "degree of control an entity has over the adverse employment decision on which the [plaintiffs'] suit is based."). Plaintiff does not rely upon this doctrine here.

preparation; (5) combined switchboards; (6) combined telephone numbers; and (7) combined offices.'" *Klein v. L-3 Commc'ns Corp.*, 2013 WL 5913776, *7 (M.D. Ala. 2013) (quoting *Walker v. Boys and Girls Club of Am.*, 38 F.Supp.2d 1326, 1331 (M.D. Ala. 1999).

Plaintiff has presented no evidence to suggest that UAHSF and UAB have combined accounting records, lines of credit, bank accounts, payroll preparation, switchboards, telephone numbers, or offices. There is evidence that UAB and UAHSF cooperate with regard to formulating budgets. (Doc. # 33-3 15). And there is also evidence that UAHSF and UAB have agreed that they would maintain their respective employment practices in a consistent manner. (Doc. # 33-3 53). However, this was "in order to ensure compliance by [UAB and UAHSF] with Federal and State laws … ." (*Id.*) UAB and UAHSF work together to provide health care services, but the Rule 56 evidence shows that they are separate and distinct entities. Therefore, this factor does not support a finding that UAB and UAHSF were a single employer.

### 2.     Common Management

"Cases treating two separate corporate entities as a single employer have placed heavy emphasis on the existence of common directors and officers." *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 727 (N.D. Ala.), *aff'd*, 664 F.2d 295 (11th Cir. 1981) (citing *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181 (8th Cir. 1977)). UAB and UAHSF have separate boards of directors and separate corporate officers. Indeed, UAHSF has 19 directors that govern its affairs, and 16 of them are not affiliated with UAB. (Doc. # 33-3 18-19, 63-64).

Plaintiff points out that the UAB Annual Financial Report states, "The Board and HSF's Board have entered into an agreement under which UAB and HSF have established a common management group, the UAB Health System, to provide management for their existing and future healthcare delivery operations." (Doc. 33-3 20). However, the fact that the UAB Health

System connects UAB and UAHSF with regard to with "healthcare delivery options," does not mean that UAHSF employed Plaintiff. Plaintiff's job duties involved performing accounting functions with PM&R, and she was not involved in the delivery of healthcare services in any form or fashion.

Plaintiff also argues that she was hired and fired by a UAHSF employee. It is undisputed that Akins is both a UAHSF and a UAB employee. However, Atkins's testimony is clear and undisputed: she hired Plaintiff as a UAB employee and applied UAB's employment policies to Plaintiff, both during her employment and in terminating that employment.

This factor does not support a finding that UAB and UAHSF are a single employer.

### 3.    Centralized Control of Labor Relations

UAB and UAHSF each have their own human resources departments and maintain separate employment policies. They administer separate retirement plans. (Doc. # 33-3 33-34; Doc. # 33-4 ¶ 11). The fact that they have agreed to make their policies consistent in order to better achieve compliance with state and federal law is not evidence of centralized control.

In supervising her UAB employees, Akins follows the UAB employment policies and procedures (*e.g.*, paid time off, severance, discipline, and performance evaluation), consults UAB human resources regarding employment issues, and works with UAB payroll regarding their pay and benefits. (Doc. # 33-4 ¶ 12). When Akins has a vacancy for a UAB position, she contacts UAB human resources and that UAB department posts the position and helps her fill it. (Doc. # 33-4 ¶ 12).

In supervising her UAHSF employees, Akins follows the UAHSF employment policies and procedures (*e.g*., paid time off, severance, discipline, and performance evaluation), consults UAHSF human resources regarding employment issues, and works with UAHSF payroll

regarding their pay and benefits. (Doc. # 33-4 ¶ 13). When Akins has a vacancy for a UAHSF position, she contacts UAHSF human resources and that UAHSF department posts the position and helps her fill it. (Doc. # 33-4 ¶ 13).

The evidence simply does not support the conclusion that UAHSF and UAB had centralized control over labor relations. Therefore, this factor does not support a finding that UAB and UAHSF are a single employer.

### 4. Common Ownership or Financial Control

Plaintiff argues that the Joint Operating Leadership ("JOL"), consisting of the CEO of UAB Health System, the Dean of the UAB School of Medicine, and the President of UAHSF, is responsible for the financial operations of UAHSF and its individual department, including PMR. (Doc. 36 at p. 15-16). However, the evidence shows only that the JOL considers the budgets of UAHSF in accordance with PMR clinical dollars. (Doc. # 33-3 26-27). UAB and UAHSF have separate financial reporting, financial organizations, and payroll. (Doc. # 33-3 33; Doc. # 33-4 ¶ 4). The two entities are separate and do not assert common ownership or financial control over their employees. (Doc. # 33-2 10).

Moreover, as noted above, there is presumption against aggregation under the single employer theory where governmental subdivisions are concerned. *Peppers v. Cobb Cty., Georgia*, 2016 WL 4474679, *6 (11th Cir. 2016) (citing *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1334 (11th Cir. 1999) ("where a state legislative body creates a public entity and declares it to be separate and distinct, that declaration should be entitled to a significant degree of deference, amounting to a presumption that the public entity is indeed separate and distinct for purposes of Title VII.")). "The reason for the presumption against aggregation where governmental subdivisions are concerned is rooted in comity, federalism, and respect for a state's

abilities to create and define its own institutions." *Peppers*, 2016 WL 4474679 at *6 (citing *Lyes,* 166 F.3d at 1343-44). The court recognizes that only one government subdivision is at issue here. But, in actuality, that fact weighs against common ownership and control. Issues regarding comity and federalism would be even more acutely affected if a federal court treated a state subdivision as aggregated with a private entity. For this additional reason, the court concludes that UAHSF and UAB are not under common financial control or common ownership for purposes of this case. Therefore, this factor does not support a finding that UAB and UAHSF are a single employer.

Because none of the relevant factors courts are to consider in this analysis support a finding of a single employer, Plaintiff's claims against UAHSF fail under the single employer theory. *McKenzie*, 834 F.2d at 933.

### B.     The "Joint Employer" Theory

"'A "joint employer" relationship is different from, though sometimes confused with, a "single employer" situation.'" *Peppers*, 2016 WL 4474679 at *7 (quoting *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1359 n.6 (11th Cir. 1994)). Two entities may be considered joint employers where they "contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees." *Lyes v. City Of Riviera Beach, Fla*., 166 F.3d 1332, 1342 (11th Cir. 1999); *see also Virgo*, 30 F.3d at 1359-60. The joint employer analysis focuses on "the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *Llampallas v. Mini-Circuits, Lab, Inc*., 163 F.3d 1236, 1244-45 (11th Cir. 1998).

Joint employment is subject to an economic reality test which our Circuit has articulated. In *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012), the court evaluated an

alleged joint employer relationship using the following eight factors: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and the payment of wages; (6) ownership of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities. The court addresses these factors in turn.

### 1. The Nature and Degree of Control of the Workers

Plaintiff was hired and supervised by Akins, who was an employee of both UAB and UAHSF. Akins treated Plaintiff in all respects as a UAB employee. In her role supervising her UAB employees, Akins followed the UAB employment policies and procedures (*e.g.*, paid time off, severance, discipline, and performance evaluation), consulted UAB human resources regarding employment issues, and worked with UAB payroll regarding their pay and benefits. (Doc. # 33-4 ¶ 12). When Akins had a vacancy for a UAB position, she contacted UAB human resources and it was that UAB department which posted the position and helped her fill it. (Doc. # 33-4 ¶ 12). When Akins decided to eliminate Plaintiff's position, she consulted UAB's human resources department and applied UAB's severance policy. (Doc. # 33-4 ¶ 15).

During her employment, Plaintiff also performed duties on behalf of UAHSF. She was assigned work and special projects by UAHSF's CFO and received direction from UAHSF's Controller. However, the court finds this insufficient overall control over Plaintiff's employment.

The court concludes that this factor weighs slightly against a joint employer finding.

### 2. The Degree of Supervision, Direct or Indirect, of the Work

Because Plaintiff performed projects for supervisors from both UAB and UAHSF, this factor weighs in favor of a joint employer finding.

### 3. The Power to Determine Pay Rates or Methods of Payment

UAB and UAHSF maintain separate payrolls and Plaintiff received her paychecks from UAB. Akins applied UAB's policies and procedures to Plaintiff, recommended pay increases through UAB's payroll system, and provided her benefits, like paid time off and severance, under UAB's policies. (Doc. # 33-4 ¶ 14; Doc. # 33-3 74-75).

Plaintiff asserts that she was also paid by UAHSF, but her paychecks were issued by UAB, and she did not receive a paycheck from UAHSF. (Doc. # 33-3 23-24). Akins testified that Plaintiff's salary derived from one source—UAB. (Doc. # 33-3 43). Although there was a period of approximately 11 or 12 months in the 2011 – 2012 timeframe that, due to a shortfall in state funds, Akins transferred funds from a PM&R account that held money generated by PM&R physician clinical activities (held in a Lawson account) into a UAB held account to make up a portion of Plaintiff's pay. (Doc. # 33-3 43-45; Doc. # 33-4 ¶ 16). But that does not carry the day for Plaintiff. These funds were transferred from HSF Finance from an account that was titled "Department of PM&R." (Doc. # 33-2 at 40-50). The court concludes that this is an insufficient basis to establish that UAHSF "determined" Plaintiff's pay.

The evidence on this factor weighs against a joint employer finding.

### 4. The Right to Hire, Fire, or Modify Employment Conditions

Plaintiff was hired and fired by UAB, according to UAB policies. Akins followed the UAB employment policies and procedures for paid time off, severance, discipline, and performance evaluations for Plaintiff. When Akins decided to eliminate Plaintiff's position, she

15

worked with UAB human resources and followed UAB's severance policy. (Doc. # 33-4 ¶ 15). She did not consult UAHSF human resources or check UAHSF policies. (Doc. # 33-4 ¶ 15). Although Plaintiff performed some tasks for UAHSF, the evidence on this factor weighs against a joint employer finding.

### 5.   Preparation of Payroll and Payment of Wages

UAB and UAHSF maintain and administer separate payroll systems. (Doc. # 33-4 ¶ 14; Doc. # 33-3 74-75). Plaintiff's paychecks were issued by UAB, and she did not receive a paycheck from UAHSF. (Doc. # 33-3 23-24). Therefore, the evidence on this factor weighs against a joint employer finding.

### 6.   Ownership of Facilities Where Work Occurred

The PM&R department where Plaintiff worked is a department of the UAB School of Medicine and is located at the Spain Rehabilitation Center, 1717 6th Avenue South, Birmingham, Alabama 35233. (Doc. # 33-2 15-16, 71-72; Doc. # 33-4 ¶ 5). UAHSF is located at 500 22nd Street, Birmingham, Alabama, 35233, whose President is Dr. James Bonner. (Doc. # 33-3 64, Doc. # 33-4 ¶ 3). The record is silent as to the ownership of these facilities.

### 7.   Performance of a Specialty Job Integral to the Business

The record is not sufficiently developed to allow the court to apply this factor.

### 8.   Investment in Equipment and Facilities.

Similar to the seventh factor, the record is not sufficiently developed to allow the court to apply this factor.

### C.   Analysis of the Eight Factors

In evaluating the test's eight factors, the Eleventh Circuit has stated that "[n]o one factor is dispositive and the existence of a joint employer relationship depends on the economic reality

of the circumstances." *Layton*, 686 F.3d at 1177. The weight of each factor depends "on the light it sheds on the workers' economic dependence (or lack thereof) on the alleged employer, which in turn depends on the facts of the case." *Id*.  The court notes that the majority of these factors do not point to a joint employer relationship.

Having considered the *Layton* factors, the court concludes that Plaintiff has failed to present substantial evidence that indicates UAHSF was her employer while she worked in the PM&R Department of UAB's School of Medicine.  Rather, the undisputed evidence, and the economic realities that can be gleaned from that Rule 56 evidence, indicate that, during the relevant time period, it was UAB -- *not* UAHSF-- which controlled the terms and conditions of both Plaintiff's employment and the adverse employment decision she complains of in this case. *See Llampallas*, 163 F.3d at 1244-45.

**V.     Conclusion**

For the foregoing reasons, Defendant University of Alabama Health Services Foundation, P.C.'s Motion for Summary Judgment (Doc. # 33) is due to be granted.

A separate order will be entered.

**DONE** and **ORDERED** this November 3, 2016.

                                                                  _____
                                                                  **R. DAVID PROCTOR**
                                                                  UNITED STATES DISTRICT JUDGE